UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| THOMAS L. GOFF,<br><br>Plaintiff,<br><br>v.<br><br>GAMEZ, et al.,<br><br>Defendants. | Case No. 1:15-cv-00937-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT GAMEZ AND DOE DEFENDANT FOR EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT, AGAINST DOE DEFENDANTS FOR FAILURE TO PROTECT IN VIOLATION OF THE EIGHTH AMENDMENT, AND AGAINST DOE DEFENDANT(S) FOR AN UNREASONABLE VISUAL BODY CAVITY SEARCH IN VIOLATION OF THE FOURTH AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF NO. 28)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |
|---|---|

**I.     BACKGROUND**

Thomas Goff ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on June 22, 2015. (ECF No. 1).

On September 29, 2016, the Court issued a screening order. (ECF No. 11). The Court

1

found that Plaintiff's complaint "state[d] cognizable claims against Defendant Gamez and Doe defendant for violation of the Eighth Amendment due to excessive force, against Doe defendants for violation of the Eighth Amendment for failure to protect, and against Defendant Everhart and Doe defendants for violation of the Fourth Amendment for unreasonable visual body cavity search. The Court [found] that Plaintiff's Complaint fail[ed] to state any other cognizable claims or claims against any other defendants." (Id. at 10).

The Court gave Plaintiff the option of proceeding with the complaint on the claims found cognizable by the Court, filing a First Amended Complaint, or standing on his complaint, subject to the Court issuing findings and recommendations to the assigned district judge consistent with the screening order. (Id.).

On December 29, 2017, Plaintiff filed his First Amended Complaint (ECF No. 28), which is now before the Court for screening.

As Plaintiff's First Amended Complaint is nearly identical to his original complaint, for the reasons described below the Court recommends allowing this case to proceed on Plaintiff's claims against defendant Gamez and Doe defendant for excessive force in violation of the Eighth Amendment, against Doe defendants for failure to protect in violation of the Eighth Amendment, and against Doe defendant(s) for an unreasonable visual body cavity search in violation of the Fourth Amendment. The Court also recommends dismissing all other claims and defendants. Plaintiff may file objections to these findings and recommendations within twenty-one days from the date of service of these findings and recommendations.

**II.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any

portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff brings this civil rights action against prison officials working at Mountain Home Conservation Camp #10 ("CC #10"), where the events at issue occurred. Plaintiff names Sergeant E.S. Gamez, Correctional Officer Everhart, Correctional Officer Harris, and CDF Fire Captain Thompson as defendants in this action.

Plaintiff alleges that on March 23, 2015, defendant Harris stood in the doorway of the recreation room bathroom and observed Plaintiff. Defendant Harris asked if Plaintiff was high, and Plaintiff responded, "Hell no, are you? [You're] the one standing in the doorway while I'm taking a piss." Defendant Harris then notified other staff members to have the inmates return to their bunk areas, instructed Plaintiff to put his hands behind his back, and handcuffed Plaintiff.

3

Defendant Harris escorted Plaintiff without incident to the CC #10 office,[1] where they met by defendant Gamez.

Defendant Gamez asked Plaintiff what his problem is. When Plaintiff responded that he had no problem and had done nothing wrong, defendant Gamez became agitated. Plaintiff was taken through the swinging door and uncuffed. Plaintiff took off his boots as requested and was subjected to a patdown search by defendant Harris as defendant Gamez observed and asked questions about what happened.

Defendant Harris stated that he suspected Plaintiff to be under the influence of an unknown intoxicant. Defendant Gamez became even more upset, pulled out a penlight device, and gave instructions for Plaintiff to follow ("put your hands to your side, feet together, look straight forward, look to the left, to the right, stop moving your head, look at the light!!!"). This procedure continued for several minutes. Defendant Gamez became more agitated and threatened Plaintiff with "rolling him up and shipping him back to Jamestown." This was unsettling to Plaintiff because he only had forty days left until his parole date.

Thereafter, defendant Gamez instructed defendant Harris to handcuff Plaintiff. Plaintiff's hands were cuffed behind his back, shackles were placed on his ankles, and Plaintiff was seated in a wheeled chair in the middle of the office behind the counter.

After Plaintiff was shackled and seated, defendant Gamez instructed defendant Harris to bring Plaintiff's property from the bunk area to be inventoried. When defendant Harris left, Plaintiff, still seated in the wheeled chair, rolled to the doorway of Gamez's office and attempted to plead his case.

Defendant Gamez then came out from behind his desk, grabbed Plaintiff's shoulder by the shirt and threw Plaintiff down hard on the floor. This took the wind out of Plaintiff's lungs, he hit his face on the floor, and his neck snapped backwards on impact. Defendant Gamez then pulled Plaintiff through the swinging door, and as Plaintiff was on the ground attempting to

---

[1] A swinging door separated the front office, which was accessible to CC #10 inmate firefighters for miscellaneous needs. The swinging door was adjacent to a counter that ran the length of the office. Defendant Gamez's own office was located behind the counter.

4

take in a breath, sat on Plaintiff's back, put a knee in the back of Plaintiff's neck, and methodically pulled and twisted Plaintiff's wrist and ankle restraints. Plaintiff cried out in pain and his pleas were ignored by defendant Gamez and everyone else who was present in the office. Plaintiff felt more pressure and weight and noticed an additional person on his back, but Plaintiff could not see who it was. Plaintiff begged and pleaded for them to stop, but they (and everyone else in the office) ignored his pleas.

Plaintiff lost consciousness. When he awoke, he was being dragged across the floor in the front office, which is accessible to inmates, and propped up against the wall by the entrance door of the office.

At that point, more CC #10 staff (including Correctional Officers Butts and Finely, and defendants Everhart and Thompson) came into the office and began to make jokes about Plaintiff's condition (Plaintiff was having a hard time swallowing, and his chest and neck hurt).

Plaintiff was instructed to stand, but he could not stand on his own due to his restraints. Defendant Everhart picked Plaintiff up and took him around the desk of the front office. Plaintiff was instructed to strip, and he began to undress. Plaintiff's request to undress in a private area was rejected. Plaintiff handed all his clothing to defendant Everhart, stood before the officers in the front office, and was subjected to a visual body cavity search.[2] Defendant Everhart made several comments, calling Plaintiff "little dick" and "pencil dick." When Plaintiff was instructed to turn around, squat, and cough, defendant Everhart asked, "How much shit can you pack up in that ass?" The other officers laughed and made rude comments about Plaintiff for several minutes as Plaintiff stood naked in the office. Plaintiff was then handed some state-blues to put on, and he got dressed.

Staff then asked Plaintiff for a urinalysis sample, which he provided.[3] Thereafter, Plaintiff was transported to Sierra Conservation Center and underwent a CDC 7219 physical, which reflected the injuries Plaintiff sustained.

---

[2] This consisted of a visual inspection of Plaintiff's mouth, genitalia, and anus.
[3] This was the fourth urinalysis sample Plaintiff provided in the last month. Plaintiff alleges that all of the tests have been negative.

5

Approximately 145 pages of exhibits are attached to the complaint.

## IV. EVALUATION OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."

Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### B. Plaintiff's Claim for Excessive Force in Violation of the Eighth Amendment

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not… use excessive physical force against prisoners."

Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

The Court finds that Plaintiff's First Amended Complaint states a cognizable claim against defendant Gamez and a Doe defendant for excessive force in violation of the Eighth Amendment. Plaintiff alleges that defendant Gamez used unprovoked force against Plaintiff when defendant Gamez threw Plaintiff down hard on the floor while Plaintiff was handcuffed and shackled, sat on Plaintiff's back, put a knee on the back of Plaintiff's neck, and methodically pulled and twisted Plaintiff's wrist and ankle restraints. Plaintiff also alleges an unnamed prison official came onto Plaintiff's back while defendant Gamez was pulling and twisting Plaintiff's wrist and ankle restraints.

However, Plaintiff's allegations are insufficient to state an excessive force claim against defendants Harris, Everhart, or Thompson. The First Amended Complaint does not allege that defendants Harris, Everhart, or Thompson were involved in the use of unprovoked force against Plaintiff or even present in the office when defendant Gamez allegedly used unprovoked force against Plaintiff.

\\\

\\\

### C. Plaintiff's Claim for Failure to Protect in Violation of the Eighth Amendment

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer, 511 U.S. at 833. To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. Id. at 834. "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

The Court finds that Plaintiff's First Amended Complaint states a cognizable claim against Doe defendants for failure to protect in violation of the Eighth Amendment. Plaintiff alleges that unnamed officers were present and failed to intervene when defendant Gamez, unprovoked, threw Plaintiff down hard on the floor while Plaintiff was handcuffed and shackled, sat on Plaintiff's back, put a knee on the back of Plaintiff's neck, and methodically pulled and twisted Plaintiff's wrist and ankle restraints.

However, Plaintiff's allegations are insufficient to state a failure to protect claim against defendants Harris, Everhart, or Thompson. The First Amended Complaint does not allege that Harris, Everhart, or Thompson were present in the office when defendant Gamez used unprovoked force against Plaintiff.

### D. Plaintiff's Claim for Sexual Harassment in Violation of the Eighth Amendment

Sexual harassment or abuse of an inmate by a prison official is a violation of the Eighth Amendment. Wood v. Beauclair, 692 F.3d 1041, 1046, 1051 (9th Cir. 2012) (citing Schwenk

v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)). In evaluating such a claim, "courts consider whether 'the official act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Wood, 692 F.3d at 1046 (alteration in original) (quoting Hudson, 503 U.S. at 8). Differentiating between claims involving physical contact and those involving verbal abuse, the Ninth Circuit has stated that "the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004). In Somers v. Thurman, the United States Court of Appeals for the Ninth Circuit found no Eighth Amendment violation when female guards gawked, pointed, and joked as they performed visual body cavity searches and shower viewings of a male inmate. 109 F.3d 614, 624 (9th Cir. 1997). The Ninth Circuit emphasized that the searches and viewings did not involve any physical contact and was "mindful of the realities of prison life . . . 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.'" Id. at 622, 624 (quoting Morgan v. Ward, 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988)).

The Court finds that Plaintiff's allegations are insufficient to state a claim for sexual harassment in violation of the Eighth Amendment. Plaintiff alleges that he was instructed to strip and subjected to a visual body cavity search in the middle of the front office, which is accessible to inmates. He stood naked in front of CC #10 staff, who verbally insulted him for several minutes. Even taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the First Amended Complaint fails to state a claim because the allegations demonstrate that the conduct at issue involved only verbal abuse and did not involve any physical contact.

### E. Evaluation of Plaintiff's Claim for an Unreasonable Visual Body Cavity Search in Violation of the Fourth Amendment

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the

search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (en banc).

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. Bull, 595 F.3d at 974–75. "[I]ncarcerated prisoners retain a limited right to bodily privacy." Michenfelder, 860 F.2d at 333 (9th Cir. 1988). The United States Court of Appeals for the Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." York v. Story, 324 F.2d 450, 455 (9th Cir. 1963); see also Michenfelder, 860 F.2d at 333 (same). "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder, 860 F.2d at 332.

The Court finds that Plaintiff adequately alleges that an unreasonable search took place. Plaintiff alleges that, despite asking for privacy, he was subjected to a visual body cavity search in front of several officers, in a location that was accessible to other inmates. Additionally, the officers verbally abused Plaintiff during the search. Taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, Plaintiff has adequately alleged that the search was vindictive or harassing.

However, Plaintiff does not identify the person (or people) responsible for conducting the search. For example, Plaintiff states that he was told to strip-out, but does not identify who told him. When he asked if the search could be conducted in a private area "[t]hey" said no. Accordingly, the Court will recommend that this claim proceed only against Doe defendant(s) at this time. Plaintiff will be required to identify these individuals after having an opportunity to take discovery.

As to Plaintiff's allegations regarding the urinalysis, they are insufficient to state a cognizable Fourth Amendment claim. The First Amended Complaint does not allege facts

demonstrating that the urinalysis was not reasonably related to legitimate penological interests or was conducted in such a manner as to harass Plaintiff. Further, the First Amended Complaint does not allege which officers were involved in the urinalysis.

## V. CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint, and finds that it states cognizable claims against defendant Gamez and Doe defendant for excessive force in violation of the Eighth Amendment, against Doe defendants for failure to protect in violation of the Eighth Amendment, and against Doe defendant(s) for an unreasonable visual body cavity search in violation of the Fourth Amendment.[4] The Court also finds that Plaintiff has failed to state any other cognizable claims.

The Court does not recommend granting further leave to amend. Plaintiff filed his First Amended Complaint after receiving ample legal guidance from the Court. Additionally, his First Amended Complaint is nearly identical to his original complaint.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's claims against defendant Gamez and Doe defendant for excessive force in violation of the Eighth Amendment, against Doe defendants for failure to protect in violation of the Eighth Amendment, and against Doe defendant(s) for an unreasonable visual body cavity search in violation of the Fourth Amendment; and

2. All other claims and defendants be dismissed.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to

---

[4] Plaintiff is advised that a Doe defendant cannot be served by the United States Marshals Service until Plaintiff has identified him or her, and amended his complaint to substitute him or her in place of the Doe defendant. For service to be successful, the United States Marshals Service must be able to identify and locate the defendant. Although the Court finds that the First Amended Complaint states cognizable claims against Doe defendants for excessive force, failure to protect, and an unreasonable visual body cavity search, Plaintiff will be required to identify specific individuals as the litigation proceeds.

Magistrate Judge's Findings and Recommendations."

Failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**April 17, 2018**__  /s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE